UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOVAL PAINT CORP. D/B/A SOL RUBIN
PAINTING,

                         Petitioner,

        - against -

JOHN DREW, AS PRESIDENT AND DIRECTOR
OF SERVICING OF DISTRICT COUNCIL NO. 9,
INTERNATIONAL UNION OF PAINTERS AND
ALLIED TRADES, A.F.L.-C.I.O., and JUAN
QUIJIJE,

                         Respondents.
----------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CV-732 (RRM) (ARL)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Petitioner Joval Paint Corp. ("Joval Paint") commenced this action in the Supreme Court

of the New York State, Suffolk County, seeking to vacate an arbitration award issued on October

16, 2018.  (Petition (Doc. No 1-1).)  Before the Court is Joval Paint's motion for summary

judgment to vacate the arbitration award and a cross-motion from respondent/cross-petitioner

John Drew, as President and Director of Servicing of District Council No. 9, International Union

of Painters and Allied Trades, AFL-CIO, ("DC 9") to confirm the arbitration award.  For the

reasons set forth below, Joval Paint's motion to vacate the award is denied and DC 9's cross-

motion to confirm the award is granted.

## BACKGROUND

      The following facts are undisputed unless otherwise noted.  Joval Paint, a painting

contractor, entered into a collective bargaining agreement or Independent Trade Agreement

("ITA") with DC 9 effective May 1, 2011, through April 30, 2019.  (Petitioner's Rule 56.1

Statement ("Pet.'s SOF") (Doc. No. 54) ¶¶ 1–3; Respondent's Rule 56.1 Counter-Statement

("Resp.'s SOF") (Doc. No. 56-1) ¶¶ 1–3).)   Juan Quijije is a member of DC 9 and was employed by Joval Paint.  (Pet.'s SOF ¶ 7; Resp.'s SOF ¶ 7.)  While employed by Joval Paint, Joval Paint sometimes paid Quijije in cash.  (Pet.'s SOF ¶¶ 9–10; Resp.'s SOF ¶¶ 9–10.)

On August 17, 2018, DC 9 served a 48 Hour Notice and Demand for Arbitration (the "Notice and Demand") on Joval Point, alleging that the contractor had failed to "pay wages and/or fringe benefits or payment in cash for wages and/or fringe benefits" to DC 9. (Pet.'s SOF ¶ 11; Resp.'s SOF ¶ 11; *see also* Notice and Demand (Exhibit C to Kugielska Decl. (Doc. No. 44-3).)   The Notice and Demand claimed that $98,036.16 in wages and $50,236.24 in benefits were due as to member Juan Quijije.  (*Id.*)  The Notice and Demand stated that the arbitration hearing would take place at DC 9's office on August 29, 2018, at 10:00 a.m.  (*Id.*)

The payment and arbitration procedure provisions of the ITA are at the center of the dispute between the parties.  The ITA contains the following relevant terms:

**ARTICLE XIII, Section 5.**
(a) Filing of the Demand to Arbitrate a Grievance or Dispute.
   (i) A demand to arbitrate a grievance or dispute shall be in writing and shall be filed by mail or hand-delivered to the Joint Trade Committee by either the Union or the Employer. Demands also shall be filed by the Union to the Employer and by the Employer to the Union. The demand shall state the name of the aggrieved party, and the name of the party against whom the grievance or dispute is asserted. The party filing the grievance or dispute shall thereafter be called the complainant. The party against whom the grievance or dispute is asserted shall thereafter be called the respondent.
   (ii) Each demand shall set forth only one alleged grievance or dispute in simple and concise form, and shall set forth the basis of the grievance or dispute, with appropriate reference to the Trade Agreement provisions at issue, to the extent known. The demand shall also set forth the date of the particular incident and, if known, the name(s) of the person and/or Employer(s) involved. The demand may also set forth the remedy sought.
   (iii) Every demand to arbitrate shall specify the name of the party serving the demand, or of an officer or agent thereof if such party is an association or corporation, and shall state that unless the party served applies to stay the arbitration within twenty (20) days after such service or, in the case of Article IX grievances, 48 hours after such service, he/she shall thereafter

be precluded from objecting that a valid agreement was not made or has not been complied with, and from asserting in court the bar of a limitation of time.

(b) Service of the Demand to Arbitrate a Grievance or Dispute and Setting of the Date of Hearing.

(i) Simultaneously with the filing of the demand with the Joint Trade Committee, the complainant will serve a copy of the demand upon the respondent. Within fourteen (14) days of the filing of the demand, the Joint Trade Committee shall notify the complainant and respondent of the date and time for the hearing of the grievance or dispute before the Joint Trade Committee. Service upon the respondent of the complainant's demand to arbitrate, and service upon the complainant and respondent by the Joint Trade Committee of the notice of the date of the hearing of the arbitration, shall be by certified mail and return receipt requested, or overnight express mail. The mailing to an Employer shall be made to the Employer's address on file with the Union.

(ii) The date set for the hearing by the Joint Trade Committee shall not be less than twenty (20) days, nor more forty-five (45) days, from the date the notice was mailed by the Joint Trade Committee.

**ARTICLE XIII, Section 11 – Schedule of Fines.**

The schedule of fines which shall be in effect for the duration of this Trade Agreement, or until such time as amended by the Joint Trade Board, will be not less than the following: …

**Violation 9**: Failure to pay wages and/or fringe benefits or payment in cash for wages and/or fringe benefits

1st Offense

Any wages and fringe benefits owed plus liquidated damages in an amount equal to the unpaid (or cash-paid) fringe benefits only, but no less than $2,000.00

**ARTICLE XXVII – Wages and Benefits.**

(a) The Wage and Benefit Package will be adjusted each year commencing May 1, 2011 as follows:

i. Effective May 1, 2011:  . . . the hourly rate shall remain at 36.40.
ii. Effective May 1, 2012: . . . the hourly rate shall become $37.44.
iii. Effective May 1, 2013: . . . the hourly rate shall become $39.00.
iv. Effective May 1, 2014: . . . the hourly rate shall become $41.08.
v. Effective May 1, 2015: . . . the hourly rate shall become $42.31.
vi. Effective May 1, 2016: . . . the hourly rate shall become $43.58.
vii. Effective May 1, 2017: . . . the hourly rate shall become $44.89.
viii. Effective May 1, 2018: . . . the hourly rate shall become $46.24.

(Pet.'s SOF ¶¶ 4–6; Resp.'s SOF ¶¶ 4–6; *see also* ITA (Exhibit A to Kugielska Decl. (Doc. No. 44-1); Exhibit A to Rubin Decl. (Doc. No. 53-1)).)

The arbitration hearing was held on August 29, 2018, before the Joint Trade Committee ("JTC"), twelve days after service of the Notice and Demand.  (Pet.'s SOF ¶ 12; Resp.'s SOF ¶ 12.)  According to Joval Paint, its counsel, Laurence Rubin, had insufficient time to prepare for the hearing.  (Pet.'s SOF ¶¶ 12–13.)  However, DC 9 notes that that Rubin never requested an adjournment or additional time to prepare.  (Resp.'s SOF ¶ 12.)  DC 9's counsel, John Drew, appeared at the August 29, 2018, arbitration with documents in support of its position that Rubin had not seen.  (Pet.'s SOF ¶¶ 16–17; Resp.'s SOF ¶¶ 16–17.)  The parties agreed to an extension of several weeks for Rubin to review the documents and submit a rebuttal to the JTC.  (Pet.'s SOF ¶ 18; Resp.'s SOF ¶ 18.)

During the arbitration, DC 9 acknowledged that Joval Paint paid Quijije by both check and cash but DC 9's position was that, under the ITA, cash payments are not recognized.  (Pet.'s SOF ¶¶ 20–21; Resp.'s SOF ¶¶ 20–21.)  DC 9's position during the arbitration was that it was owed for all of the payments made to Quijije in cash, totaling $98,036.16.  (Pet.'s SOF ¶ 23; Resp.'s SOF ¶ 23.)  Rubin provided the JTC with rebuttal arguments on September 14, 2018.  (Pet.'s SOF ¶¶ 23–24; Resp.'s SOF ¶¶ 23–24.)

On October 9, 2018, the JTC issued its decision (unsigned) and found that Joval Paint was obligated to pay $98,036.16 in wages and $50,236.24 in benefits to Quijije.  (Pet.'s SOF ¶ 26; Resp.'s SOF ¶ 26.)  On October 16, 2018, the JTC issued an amended (again unsigned) Decision and Award ("Decision and Award"); however, the amendment did not alter the Committee's conclusion or the amount of damages awarded.  (Pet.'s SOF ¶ 27; Resp.'s SOF ¶ 27; *see also* Decision and Award (Exhibit D to Kugielska Decl. (Doc. No. 44-4); Exhibit E to

Rubin Decl. (Doc. No. 53-5)).)  The Decision and Award states, "the Board deliberated and found [Joval Paint] guilty of failing to pay wages and benefits to member Juan Quijije for the period 2/17/15–5/08/18, in violation of Article XIII Section 11 Violation 9 of the [ITA]." (Decision and Award at 5.)[1]  Pursuant to the Decision and Award, Joval Paint was obligated to pay the damages awarded, which it did.  (Pet.'s SOF ¶ 28; Resp.'s SOF ¶ 28; Decision and Award at 5.)

On January 14, 2019, Joval Paint filed the instant petition in the Supreme Court of the State of New York, Suffolk County, seeking to vacate the Decision and Award.  (Petition.)  Joval Paint argues, among other things, that the notice of arbitration was deficient, the JTC failed to follow proper procedure by not signing the award, and that the JTC exceeded its power by failing to credit Joval Paint with its prior cash wage payments to Quijije.  (*Id.*)

On February 6, 2019, DC 9 removed the petition to this Court, invoking federal jurisdiction pursuant to 28 U.S.C. section 1441 and 1331 and Section 301 of the Labor Management Relations Act.  (Notice of Removal (Doc. No. 1).)  On February 13, 2019, DC 9 answered the petition to vacate and cross-moved to confirm the Decision and Award, arguing that Joval Paint is in breach of the ITA because Article XIII, Section 8, provides that all awards by the Joint Trade Board are final, and under Articles VIII and XX, Joval Paint was bound to a specific payment protocol, to which it failed to adhere.  (Answer and Counterclaim (Doc. No. 8).)

In July 2020, the parties filed cross-motions: Joval Paint for summary judgment to vacate the arbitration award, (Motion to Vacate ("Mot. to Vacate") (Doc. No. 55)), and DC 9 for judgment as a matter of law to confirm the arbitration award, (Motion to Confirm Award ("Mot.

---

[1] All page numbers refer to ECF pagination.

to Confirm") (Doc. No. 43)).  Joval Paint argues that the arbitration award must be vacated because the JTC failed to follow state law by not signing the Decision and Award.  (Mot. to Vacate at 9–10.)  Joval Paint also argues that certain procedural defects in the notice of arbitration violated the ITA, requiring vacatur of the Decision and Award.  (*Id.* at 11–12.)  Joval Paint further argues that the JTC exceeded its power by awarding past wages due to Quijije, who had already been paid in cash, and that the Decision and Award violated state law and should be vacated on this basis.  (*Id.* at 13–16.)  Finally, Joval Paint insists that the Decision and Award should be vacated even if the Court applies the Federal Arbitration Act ("FAA") as opposed to New York State law.  (*Id.* at 17–20.)  In opposition, DC 9 contends that Joval Paint has not satisfied its burden of establishing that the JTC exceeded its powers under both New York State and FAA and points to the arguments it raises in its memorandum of law in support of its motion to confirm the arbitration award and in opposition to Joval Paint's motion.  (Opposition to Mot. to Vacate (Doc. No. 56).)

In its motion for judgment as a matter of law to confirm the arbitration award, DC 9 argues that Joval Paint has failed to satisfy its burden of proof.  (Mot. to Confirm at 10.)  DC 9 argues that Joval Paint cannot establish that the JTC exceeded its power because the Decision and Award was based on Joval Paint's admitted violation of the ITA.  (*Id.* at 11–13.)  DC 9 maintains that none of the alleged deficiencies in DC 9's notice violate state law, that Joval Paint fails to assert it was prejudiced by the alleged deficiencies, and that Joval Paint waived any objection to the alleged deficiencies through its continued participation in the arbitration.  (*Id.* at 13–15.)  Finally, DC 9 submits that the Decision and Award must be confirmed if the Court does not vacate, modify, or correct it.  (*Id.* at 15–16.)  In opposition, Joval Paint argues that DC 9's motion should be denied for failure to comply with Local Rule 56.1.  (Opp. to Mot. to Confirm.

(Doc. No. 49) at 8–9.)  Joval Paint also reiterates many of the arguments it raised in its motion to vacate the Decision and Award.  (*Id.* at 9–16.)

## STANDARDS OF REVIEW

### A.  Confirmation under Labor Management Relations Act

"Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *Trs. of Empire State Carpenters Annuity v. Fourmen Constr., Inc.*, No. 15-CV-3252 (JFB) (ARL), 2016 WL 146245, at *2 (E.D.N.Y. Jan. 13, 2016) (internal citations and quotation marks omitted) (emphasis added); *see also Supreme Oil Co., Inc. v. Adondolo*, 568 F.Supp.2d 401, 405 (S.D.N.Y. 2008) ("Court review of an arbitration award is extremely deferential under both § 301 of the LMRA … and § 9 of the Federal Arbitration Act ….")

The Supreme Court has recognized that "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Paperworkers Int'l v. Misco*, 484 U.S. 29, 36, (1987) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)).  Accordingly, a district court's review of a final arbitration award is limited.  *Id.*; *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("Judicial review of a labor-arbitration decision . . . is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."). "The strong policy favoring the resolution of labor disputes by arbitration dictates that courts give broad discretion to the powers of an arbitrator and construe narrowly those circumstances where an award ought to be vacated." *Huntington Hosp. v. Huntington Hosp. Nurses' Ass'n*, 302 F. Supp. 2d 34, 39 (E.D.N.Y. 2004) (citations omitted).

A party moving to vacate an arbitration award "bears the burden of proof, and the showing required to defeat confirmation is high." *N.Y. Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997).

> [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. Of course, decisions procured by the parties through fraud or through the arbitrator's dishonesty need not be enforced.

*United Paperworkers Intern. Union. AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Courts have recognized that "where a party seeks to have an arbitration award vacated, '[t]he policies of section 301 and the FAA are analogous . . . as both recognize the importance of arbitration and provide for limited review of arbitral decisions.'" *SEIU Loc. 74 Pension Fund v. Nazareth Reg'l High Sch.*, No. 04-CV-0867 (BMC) (RER), 2007 WL 9723242, at *1 (E.D.N.Y. Jan. 3, 2007) (quoting *HRH Constr., L.L. C. v. Local No. 1. Int'l Union of Elevator Constr., AFL-CIO*, No. 03-CV-8944 (DC), 2005 WL 31948, at *4 (S.D.N.Y. Jan. 5, 2005)).

**B. Summary Judgment**

A motion for summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact and, in determining whether this burden has been met, a court must view all facts in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *El Sayed*, 627 F.3d at 933. "When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party

opposing summary judgment . . . must set forth specific facts demonstrating that there is a genuine issue for trial" and cannot "merely rest on the allegations or denials" contained in the pleadings.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks omitted).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over material facts – "facts that might affect the outcome of the suit under the governing law" – will properly preclude the entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).

## DISCUSSION

While neither party argues that the ITA contains a choice of law provision, they seem to agree that New York State law applies in some respects but also dispute the applicability of the FAA.  The relevant New York statute is CPLR § 7511, which governs vacating or modifying arbitration awards.  The relevant federal provision is the FAA, 9 U.S.C. 1 § *et. seq*.  There is no conflict between New York and federal law on any of the issues relevant to this dispute, and the holdings of this case can rest on either body of law.  *See e.g. Yonir Techs., Inc. v. Duration Sys. (1992) Ltd.*, 244 F. Supp. 2d 195, 203 (S.D.N.Y. 2002).

Under CPLR § 7511(b)(1), an arbitration award can be vacated if the court finds a party's rights were prejudiced by: (i) corruption, fraud, or misconduct in procuring the award; (ii) partiality of an arbitrator; (iii) an arbitrator or agency making an award that exceeded his power or so imperfectly executed it that a final and definite award was not made; or (iv) failure to follow the procedure of the CPLR.  N.Y. CPLR § 7511(b)(1) (McKinney 2001).

Section 10 of the FAA provides four grounds for vacating an arbitration award:

[i] where the award was procured by corruption, fraud, or undue means;
[ii] where there was evident partiality or corruption in the arbitrators, or either of
them;
[iii] where the arbitrators were guilty of misconduct in refusing to postpone the
hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent
and material to the controversy; or of any other misbehavior by which the rights
of any party have been prejudiced; or
[iv] where the arbitrators exceeded their powers, or so imperfectly executed them
that a mutual, final, and definite award upon the subject matter submitted was not
made.

9 U.S.C. § 10(a)(1)-(4). Additionally, a court may vacate an arbitration award on two judicially

created exceptions: (1) that the award was made in "manifest disregard of the law," *Duferco*

*Intern. Steel Trading v. T. Klaveness Shipping A/S*, 444 F.3d 383, 388 (2d Cir. 2003), and (2) that

the award violates public policy, *see United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,

484 U.S. 29, 42 (1987).

Nothing in the record indicates that the JTC's Decision and Award should be vacated.

The undisputed facts do not support vacating the Decision and Award due to any procedural

defects. Joval Paint argues that the Decision and Award should be reversed because it does not

comply with CPLR § 7507, which requires the arbitration award to be "signed and affirmed."

The fact that the JTC did not sign the Decision and Award is purely technical and not grounds

for vacatur of the Decision and Award. *See Korein v. Rabin*, 29 A.D.2d 351, 356 (N.Y. App.

Div. 1st Dep't 1968). Joval Paint does not (and cannot) argue that it was prejudiced by the JTC's

failure to sign the Decision and Award and the Court will not vacate an otherwise procedurally

sound Decision and Award on this basis.

Additionally, Joval Paint fails to establish that it was prejudiced by any alleged defects in

the notice of arbitration. The Notice and Demand clearly states that the basis of the arbitration

was "[f]ailure to pay wages and/or fringe benefits or payment in cash for wages and/or fringe

benefits for LU 24/DC9," and states the claimed amount in damages and to whom the damages are due -- $98,036.16 in wages and $50,236.24 in benefits to Juan Quijije. While it is unclear from the record before this Court whether Joval Paint objected to the Notice and Demand before the JTC, whether it objected or not is of no moment. The Notice and Demand complied with the notice of arbitration provisions of the ITA.

Joval Paint argues that the JTC exceeded its power by awarding Quijije damages in its Decision and Award because Quijije had already been paid that amount in cash. The Court disagrees. The facts regarding the amount of payments made in cash to Quijije are undisputed and Joval Paint agrees that $98,036.16 in cash wages were paid to him. (Pet.'s SOF ¶ 22; Resp.'s SOF ¶ 22.) The relevant provision of the ITA, Article XIII, Section 11, states that the penalty for "payment in cash for wages and/or fringe benefits" is, for the first offense, a fine in the amount of "[a]ny wages and fringe benefits owed plus liquidated damages in an amount equal to the unpaid (or cash-paid) fringe benefits only, but no less than $2,000.00." DC 9 argued that "Article XIII Section 11 Violation 9 of the ITA treats unpaid and cash paid wages as wages 'owed' for the purpose of applying its stated penalty, which is the payment of the unpaid or cash paid wages, and in accordance with its purpose of invalidating the enormously harmful practice of making payments in cash." (Mot. to Confirm at 12 (citing Drew Dec. ¶¶ 6–7)). Given the undisputed fact that Quijije was paid in cash and the language of the parties' negotiated agreement, the JTC's Decision and Award construed and applied the contract and acted within the scope of its authority to reach its Decision and Award, ultimately agreeing the DC 9's argument regarding this key provision. Accordingly, the Decision and Award must be confirmed. It follows that the Court cannot find that Joval Paint has met its high burden demanding vacatur of the Decision and Award.

**CONCLUSION**

For the reasons stated above, Joval Paint's motion for summary judgment is DENIED.

DC 9's cross-motion for judgment as a matter of law to confirm the arbitration award is

GRANTED in its entirety and the JTC's Decision and Award is confirmed.  The Clerk of Court

is respectfully directed to enter judgment for DC 9 and to close the case.

                                                    SO ORDERED.

Dated: Brooklyn, New York                  *Roslynn R. Mauskopf*
       March 26, 2021
                                           _____
                                           ROSLYNN R. MAUSKOPF
                                           United States District Judge

12